IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                 No. 07-10029 B

JOSE LUIS RODRIGUEZ-TIRADO,

     Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
REGARDING COUNT 1 AND DIRECTING DEFENDANT'S COUNSEL TO
ADVISE THE COURT CONCERNING STATUS OF MOTION TO SUPPRESS
AS TO COUNT 2
_____

Before the Court is the motion of the Defendant, Jose Luis Rodriguez-Tirado, to suppress evidence. The Defendant was charged in a two-count superseding indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Rodriguez-Tirado has moved, regarding Count 1 of the indictment, to suppress evidence seized during the search of a vehicle he was driving on the grounds that the officers' actions violated his rights under the Fourth Amendment of the United States Constitution.

At a hearing conducted on August 28, 2009, the Government presented the testimony of Kenny Fox and Michael Hamilton. The relevant testimony proffered by these witnesses is as follows. Fox has served as the chief of police in Decaturville, Tennessee for six years. On November 17, 2006, he was "running radar" in a marked cruiser in Decaturville around noon when he clocked the Defendant's black two-door Camaro traveling 35 miles per hour in a 30 mile per hour zone. Fox pulled in behind the vehicle and activated his blue lights. After about a mile, Rodriguez-Tirado, who was alone, stopped. As Fox approached the open driver's side window, he detected the

odor of an intoxicating beverage.  He looked in the back seat and observed an open forty-ounce bottle of alcohol behind the driver's seat.  The officer thought the Defendant took an inordinately long time to pull over considering he was on a two-lane road with shoulders on each side.  He also noted that, prior to stopping, the Defendant "was moving around backwards into his backseat compartment with his hand."

Fox advised Rodriguez-Tirado of the reason for the stop and asked if he had been drinking.  The Defendant replied "A little but, not much," adding that he had been working and it was the end of his day.  The officer requested Rodriguez-Tirado's driver's license, registration and proof of insurance.  The Defendant provided a driver's license and registration, along with a photograph of him and a local general sessions judge together, and advised that the two were "real close."  A check of the Defendant's documentation suggested nothing was amiss, although the officer's interest was piqued by the somewhat odd gesture regarding the photograph.  Fox instructed Rodriguez-Tirado to get out of the car, advised him he had seen the open bottle, placed the half-empty container on the police vehicle and proceeded to conduct a sobriety test.  Based on his observations that Rodriguez-Tirado was very talkative, non-aggressive, pleasant and steady on his feet, Fox concluded that he was not under the influence of alcohol.  At that point, Hamilton arrived on the scene.

The officer wrote the Defendant a ticket, handed it to him and then asked if there would be a problem with him searching the vehicle.  Rodriguez-Tirado replied, "No, I don't have a problem. You can search my vehicle."  Fox searched the driver's compartment and back seat.  He then asked Rodriguez-Tirado to accompany him to the rear of the vehicle, where he used the key to open the Camaro's hatchback, revealing a long gun, two .43 rifles and a TEC-9 pistol-type weapon.  The Defendant was handcuffed and placed in the back of the cruiser.

2

On cross-examination, Fox could not recall whether Rodriguez-Tirado got back in the car after the sobriety test was concluded but knew he did so after receiving the ticket and his documentation.  Rodriguez-Tirado signed the citation, at which point the officer asked to search.  The Defendant exited the car in order for the search to be conducted.  Fox estimated that the initial encounter through the issuance of the citation took ten to eleven minutes.

Hamilton, a deputy with the Decatur County, Tennessee sheriff's department on and off since 1996, testified that, when he arrived at the location of the stop, Fox was out of his cruiser.  The two approached the Camaro's driver's side, Hamilton hanging back toward the rear of the vehicle.  He heard Fox ask for consent to search and the Defendant assent.  Hamilton stood by while Fox conducted the search and located two weapons, one a rifle and the other a TEC-9, in the back of the Camaro.

On cross-examination, Hamilton recalled that Rodriguez-Tirado was placed into custody after the guns were found.  He also remembered that the only time the Defendant was out of his vehicle was when he was placed under arrest.  According to the witness, Rodriguez-Tirado was arrested because, when Fox ran the serial numbers on the guns, one had been reported stolen.  Hamilton stated that he arrived at the scene only a few seconds behind Fox and "was there pretty much the whole time."  He could not recall whether the citation was given to the Defendant during the stop or after he was transported to jail.

The Defendant testified at the hearing, denying that he consented to a search of the Camaro.  He also offered the testimony of Sarah Spalding, who averred that Rodriguez-Tirado attended her church.  He had been recommended by someone at the church to do painting and repair work at her home.  Spalding indicated that, on the day of his arrest, he was coming into town to pay some of the

3

men who had performed the work for her and phoned her to say he was on his way.  A few minutes later he called again to inform her he had been pulled over by Fox.  Spalding, who was approximately a mile-and-a-half away, drove to the scene to find the Defendant sitting in a patrol car and Fox walking around the trunk area of the Camaro.  She pulled up, stopped and approached the Camaro on foot.  She asked the police chief why the Defendant was in the cruiser.  Fox did not answer, but raised the trunk lid, making it possible for her to see the guns inside.  He had no other discussion with her.  According to Spalding, no one else was there except for Rodriguez-Tirado and Fox.  She recognized the rifle and told Fox the guns belonged to her.  She did not recognize the pistol but did not get a good look at it.  Again, the officer offered no response.  He removed the guns from the trunk and placed them in the patrol unit.  She followed the squad car to the jail.  Spalding recalled that, when Rodriguez-Tirado was removed from the car at the jail, his hands were cuffed behind him.

Entered as an exhibit at the hearing was a document written by Spalding dated July 14, 2009, which stated as follows:

To Whom It May Concern:

This note is in reference to Jose Tirado.  I, Sarah Spalding, received a phone call on September 17, 2006,[1] from Jose Tirado stating he had been stopped by Officer Kenny Fox who said that he was traveling 35 miles an hour in a 30 mile zone.  I told Jose I would be there in a few minutes for the incident took place a few miles from my house.  Upon arrival and [sic] parked my car I walked towards Officer Fox and saw that Jose was already in the squad car.  I asked why Jose was pulled over.  Officer Fox proceeded to open the trunk of the car.  While searching the trunk he found two guns.  I recognized the guns and told the officer that they belonged to me.  Officer Fox took the guns and put them in the squad car and carried Jose off to jail.  I still do not have my guns.  Sarah Spalding, 230 Timberglade Lane, Parsons, Tennessee

---

[1]It appears Spalding is mistaken about the date on which the incident occurred, as the remaining evidence presented indicates it took place on November 17, 2006.

4

38363.

Both Hamilton and Fox were recalled to the stand, and disputed Spalding's assertion that she was at any time present at the scene of the search.  Rather, they both insisted they encountered her for the first time at the Decatur County Jail.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001).  Evidence obtained by a warrantless search and seizure that violates the Fourth Amendment is inadmissible in a criminal trial.  United States v. Wright, 16 F.3d 1429, 1434 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S. Ct. 2759, 129 L. Ed. 2d 874 (1994).

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008) (citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)).  The Defendant does not dispute that he was traveling in excess of the posted speed limit.  "Once the purpose of an ordinary traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." United States v. Perez, 440 F.3d 363, 370 (6th Cir.), *cert. denied sub nom.* Rhodes v. United States, 549 U.S. 1014, 127 S. Ct. 542, 166 L. Ed. 2d 401 (2006) (citation and internal

quotation marks omitted).  However, asking for consent to search the vehicle does not by itself

extend the stop beyond its permissible scope.  *See* United States v. Burton, 334 F.3d 514, 517-19

(6th Cir. 2003), *cert. denied,* 540 U.S. 1135, 124 S. Ct. 1113, 157 L. Ed. 2d 941 (2004)[2]; *see also*

Blair, 524 F.3d at 752 (citing Burton); United States v. Biles, 100 F.App'x 484, 489-90 (6th Cir.

2004).  The Court finds that Fox's request to search the Camaro, immediately after issuing the

citation and returning Rodriguez-Tirado's documentation, did not impermissibly extend the traffic

stop.

Although the Defendant denies that he consented to a search of the Camaro, the Court finds

credible the testimony of the officers that he did in fact consent.  Consent has been recognized as

an exception to the warrant requirement.  United States v. Campbell, 317 F.3d 597, 608 (6th Cir.

2003) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854

(1973)).  Consent must be "voluntary and freely given."  United States v. Moon, 513 F.3d 527, 537

(6th Cir.), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2493, 171 L. Ed. 2d 782 (2008) (citing Bumper v.

North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)).  "The [G]overnment

bears the burden of demonstrating by a preponderance of the evidence, through clear and positive

---

[2]In Burton, the court opined that

> [q]uestions that hold potential for detecting crime [including requests for
> permission to search], yet create little or no inconvenience, do not turn reasonable
> detention into unreasonable detention.  They do not signal or facilitate oppressive
> police tactics that may burden the public -- for all suspects (even the guilty ones)
> may protect themselves fully by declining to answer.  Nor do the questions
> forcibly invade any privacy interest or extract information without the suspects'
> consent.

Burton, 334 F.3d at 518 (citing United States v. Childs, 277 F.3d 947, 954 (7th Cir. 2002) (en
banc), *cert. denied,* 537 U.S. 829, 123 S. Ct. 126, 154 L. Ed. 2d 43 (2002)).

testimony, that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." United States v. Canipe, 569 F.3d 597, 602 (6th Cir. 2009), *reh'g denied* (July 23, 2009) (internal citations and quotation marks omitted).  Whether consent was voluntary is to be determined by examining the totality of the circumstances.  United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008), *cert. denied,* ___ U.S. ___, 129 S. Ct. 1601, 173 L. Ed. 2d 690 (2009).  Relevant factors to be considered by the court, none of which are dispositive, include the age, intelligence and education of the defendant; whether he understands his constitutional rights; whether he understands his right to refuse consent; the length and nature of his detention; and the use of coercive or punishing conduct by police.  United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999); United States v. Thomas, No. 09-10005, 2009 WL 2971781, at *4 (W.D. Tenn. July 20, 2009).  "While knowledge of the right to refuse may be considered as a factor, it is not a necessary finding.  A subjective belief of coercion is not sufficient to destroy voluntariness."  McCauley, 548 F.3d at 446 (internal citation omitted).

Upon hearing the testimony, it is clear to the Court that the Defendant expressly gave Fox permission to search the vehicle and that such consent was voluntarily given.  There is no evidence, nor has it been asserted by the Defendant, that any of the relevant factors to be considered by the Court weigh in favor of a finding that consent was not voluntary.  Based on the Court's finding that the Defendant consented to a search of the vehicle in which the guns were found, the motion to suppress is DENIED.[3]

---

[3]In light of the Court's conclusion, it is unnecessary to resolve any conflict in the testimony of Spalding and the two officers.  The Court also need not address the Defendant's argument concerning Arizona v. Gant, ___ U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), in which the United States Supreme Court clarified the law regarding searches of vehicles incident to arrest.  Gant, 129 S. Ct. at 1713.  In Gant, the Court offered no opinion regarding

Also pending before the Court is the Defendant's motion to suppress as to Count 2 of the indictment, filed July 24, 2009.  Defendant's counsel is hereby DIRECTED to advise the Court within ten (10) days of the entry of this order whether she intends to pursue the July 24, 2009 motion.

IT IS SO ORDERED this 22nd day of September, 2009.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

searches of vehicles on the grounds of voluntary consent and, therefore, the case has no application here.